Jean NICHOLS, individually; as next friend of her minor child, Terrie Johnston; and on behalf of all others similarly situated, Appellants,

v.

Samuel R. PIERCE, Jr., Secretary of the Department of Housing and Urban Development.

Jean NICHOLS, individually; as next friend of her minor child, Terrie Johnston; and on behalf of all others similarly situated, Appellants,

v.

Samuel R. PIERCE, Jr., Secretary of the Department of Housing and Urban Development.

Nos. 81–1160, 83–1154.

United States Court of Appeals, District of Columbia Circuit.

Argued 12 Jan. 1984.

Decided 10 Aug. 1984.

Brian Paddock, Cookeville, Tenn., with whom Florence Wagman Roisman, Washington, D.C., was on the brief for appellants. Lee P. Reno and Ilene J. Jacobs, Washington, D.C., also entered appearances for appellants.

John W. Polk, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Royce C. Lamberth and R. Craig Lawrence, Washington, D.C., were on the brief for appellee. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before WILKEY and MIKVA, Circuit Judges, and MARKEY,* Chief Judge for the United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge WILKEY.

Opinion concurring in part, dissenting in part, filed by Circuit Judge MIKVA.

WILKEY, Circuit Judge:

These consolidated appeals stem from the attempts of appellant Jean Nichols to recover attorneys fees incurred in an action brought against the United States Department of Housing and Urban Development ("HUD"). After successfully challenging the sufficiency of procedural protections accorded to tenants receiving housing subsidies under a program administered by HUD, the appellant filed successive petitions for attorneys fees in the United States District Court, first under the Freedom of Information Act[1] and second, more than a year later, under the Equal Access to Justice Act.[2] District Judge Thomas A. Flannery disallowed both petitions, holding that the appellant's lawsuit was not brought under the Freedom of Information Act, and that the application for fees under the Equal Access to Justice Act was not timely filed. Because the appellant never substantially relied on FOIA in pressing for a mandatory revision of HUD's rules, and because the entire case was filed, briefed, argued, and decided more than a year prior to the effective date of the EAJA, we affirm both rulings of the district court.

## I. BACKGROUND

Under Section 8 of the Existing Housing Program,[3] a qualifying family may live in a privately-owned dwelling with financial assistance in the form of rental subsidies paid by HUD to the landlord. The size of the dwelling unit which HUD may subsidize is principally determined by the number of family members residing in the home.[4] Shortly after appellant's son moved out of her home, she received notice that she would only be entitled to receive a subsidy for a two-bedroom house, effectively requiring her to move from the three-bedroom house in which she had been living with her son and daughter. Citing unique hardship and claiming that the lack of a hearing prior to the reduction in her subsidy violated the National Housing Act,[5] the Administrative Procedure Act,[6] and the due process clause of the fifth amendment, she initiated an action in the United States District Court for the District of Columbia. The suit, filed 13 November 1979, sought an injunction preventing HUD from taking adverse action against her and the class of people similarly situated. She also sought declaratory and injunctive relief to invalidate the existing family size requirements and to compel HUD to issue new regulations which would establish a right to notice and hearing prior to reduction or termination of housing assistance benefits.[7]

Shortly after the suit was filed, the appellant received a waiver of the family size requirements which permitted her family to remain in the three-bedroom home. The Government then filed a motion for summary judgment contending that the controversy was moot. This motion was denied on 7 January 1980.

A few weeks later HUD completed and released a new handbook entitled "Public Housing Agency Administrative Practices for the Section 8 Existing Housing Program" ("Section 8 Handbook").[8] This handbook's guidelines required local public

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1982).

1. 5 U.S.C. § 552(a)(4)(E) (1982).

2. 28 U.S.C. § 2412 (1982).

3. *See* 42 U.S.C. § 1437f(b)(1) (1982).

4. *See* 24 C.F.R. §§ 882.209(a)(2), 882.213 (1983).

5. *See* 42 U.S.C. § 1437f (1982).

6. 5 U.S.C. §§ 551–559 (1982).

7. *See* Appendix at 14, No. 81–1160.

8. *Id.* at 61.

housing authorities to give notice to tenants prior to proposed reductions in rental assistance benefits, provided for informal hearings prior to actual reductions, and directed issuance of a written statement of the reasons for the action.[9] The Government asserted that the release of the handbook resolved all remaining aspects of the controversy in litigation and renewed its motion for summary judgment. That motion was also denied.

Instead, on 12 September 1980, the district court certified appellant's class and granted the appellant's motion for summary judgment. In the accompanying order the district court directed HUD to formalize the provisions of its Section 8 Handbook by incorporating them within the Code of Federal Regulations. The court also directed HUD to include within those procedures mandatory notification to housing claimants of their right to a waiver of the family size requirements, and the grounds upon which a waiver could be granted.[10] The Government did not appeal this order.

Since summary judgment was granted the appellant has sought to recover attorneys fees incurred during the litigation. At the time relief on the merits was obtained, there was no statute generally permitting awards of attorneys fees against the United States. Consequently, in a petition for attorneys fees filed 7 October 1980, appellant attempted to recover attorneys fees under the specialized provisions of the Freedom of Information Act ("FOIA"),[11] which permit a court to award fees to litigants who substantially prevail in any action brought under the Freedom of Information Act. The district court rejected the petition, holding that any possible "FOIA claim played such a minor role in plaintiff's case" that the action could not be considered as one brought under FOIA, consistent with congressional intent.[12]

The appellant challenged that action on appeal to this court. During the course of this first appeal the Equal Access to Justice Act ("EAJA" or "Act") took effect.[13] Consequently, without deciding whether the appellant was entitled to attorneys fees under FOIA, we remanded the case for the district court to consider the availability of attorneys fees under the new EAJA.

On remand the district court ruled that the appellant had not filed a request for fees within thirty days of the final judgment (12 September 1980) as required by the EAJA, and rejected appellant's application for fees. Appellant now appeals the denial of fees under the EAJA and renews the challenge to the district court's refusal to award fees under FOIA.

## II. ATTORNEYS FEES UNDER THE FREEDOM OF INFORMATION ACT

Section 552(a)(4)(E) of the Freedom of Information Act permits, but does not require, a court to assess attorneys fees against the United States "in any case *under this section* in which the complainant has substantially prevailed." [14] The appellant asserts that the district court erred when it concluded that her suit was not brought "under" FOIA. The appellant commenced the action in an attempt to require HUD to amend its previous Section 8 regulations to conform to the standards of due process and the Administrative Procedure Act. That suit was successful. Because the district court ordered HUD to publish its amended Section 8 Handbook in the Federal Register, thus granting relief arguably requested in the appellant's complaint, she now contends that her suit secured agency compliance with FOIA's mandate that each agency publish in the Federal Register all "substantive rules of general applicability," "statements of general

9. Brief for Appellee at 3, No. 81–1160; Appendix at 61, 63, No. 81–1160.

10. *See* Appendix at 43–44, No. 81–1160.

11. 5 U.S.C. § 552(a)(4)(E) (1982).

12. Appendix at 54, No. 81–1160.

13. Relevant portions of this Act are codified at 5 U.S.C. § 504 (1982) and 28 U.S.C. § 2412 (1982).

14. 5 U.S.C. § 552(a)(4)(E) (1982) (emphasis added).

policy," and "interpretations of general applicability." [15] This relief allegedly establishes the claim as one brought "under" FOIA within the meaning of Section 552(a)(4)(E).[16]

This claim was extensively elaborated before the district court. Judge Flannery, who was intimately familiar with the course of the litigation, thoroughly considered the appellant's contentions and rejected them in a sound and well-reasoned opinion. There is need to plod once again through each step of appellant's labored arguments; it is abundantly clear that the appellant neither sought nor obtained relief under the Freedom of Information Act. This is unmistakable from the pleadings filed by appellant, the manner in which the sought-after relief was obtained, and the appellant's own characterization of her case on appeal.

The complaint is devoid of any mention of FOIA by name. Neither does it contain any citation to the FOIA provision (Section 552(a)(1)(D)) under which the suit was allegedly brought. Although the complaint does refer to "§ 552, *et seq.*," this is always described as the "Administrative Procedures [sic] Act," not the Freedom of Information Act. Moreover, the appellant's "cause of action" was the alleged "failure to require by regulation [the] notice and right to a hearing" mandated by the "National Housing Act, 42 U.S.C. § 1437f" and the "due process clause." [17] Failure to comply with the informational requirements of FOIA was not alleged.

The complaint's failure to assert a claim under FOIA or to rely specifically on the provisions of Section 552(a)(1)(D) is not surprising, since the provisions of FOIA are largely irrelevant to the appellant's effort "to have the court declare unconstitutional and enjoin the practice of [HUD] of denying procedural due process to low income participants in the Section 8 Existing Housing Program," [18] and to compel the promulgation of conforming regulations. The gravamen of the complaint establishes that appellant requested an amendment of challenged rules, not the mere public dissemination of agency guidelines through the Federal Register. Read in this context, it is apparent that publication of "required material in the Federal Register" [19] was sought merely as a precursor to issuance of final, corrected, binding regulations which secured the statutory and constitutional rights of the appellant. Because publication in the Federal Register was a necessary step in the rulemaking process which HUD was required by the Administrative Procedure Act to complete if ordered by the district court to amend its Section 8 regulations,[20] that relief would have been ordered independently of FOIA's requirement that agency rules "adopted as authorized by law" be published in the Federal Register "for the guidance of the public." [21]

Not only was there no reference to the specific protection of FOIA in the pleadings, but the tangential relevance of FOIA did not become apparent in the litigation until the appellant moved for summary judgment. Even then Section 552(a)(1)(D) was cited merely as a fallback defense to HUD's position that its handbook rules could be considered merely interpretive guidelines, exempt from publication under Section 553 of the Administrative Procedure Act. Appellant relied on FOIA as an alternative ground under which the Section 8 regulations could be published in the event the district court found them to be both consistent with due process and interpretive guidelines statutorily exempt from rulemaking under the APA. This passing

---

15. *Id.* § 552(a)(1)(D).

16. *See Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978).

17. Complaint for Injunctive and Declaratory Relief and Relief in the Nature of Mandamus ¶ 25, Appendix at 13, No. 81–1160.

18. *Id.* ¶ 1, Appendix at 6, No. 81–1160.

19. *Id.* ¶ 3, Appendix at 14, No. 81–1160.

20. *See* 5 U.S.C. § 553(b) (1982).

21. *Id.* § 552(a)(1)(D).

reference to FOIA was so irrelevant to the resolution of appellant's claim that the district court concluded "FOIA played little role in plaintiff's argument, and no role in the court's decision." [22]

Disputing that conclusion on appeal, the appellant attempts to recast the FOIA claim as a substantial one, which played an "important role ... in the decision to file and pursue this action ...." [23] But that representation is inconsistent with appellant's assessment of the reasons prompting the suit, which also dictated the scope and type of relief sought: "The action was brought *partially* as a desperate last resort after a judgment for possession was entered against Mrs. Nichols, and *partially* in an attempt to procure a lasting change in HUD policy denying Section 8 tenants adequate procedural protection." [24] The mere publication of the *existing* guidelines to secure HUD's compliance with FOIA could not have accomplished either of these objectives. Clearly appellant's suit was not directed to the dissemination of public information but the substantive amendment of defective regulations.

There might be circumstances in which an award of attorneys fees under FOIA would be an appropriate response to a suit brought to correct agency action which is deficient under both FOIA and the Administrative Procedure Act, but we are satisfied they are not present here. Certainly none of the cases cited by the appellant compels a different result. [25] When Congress permitted recovery of attorneys fees in some FOIA cases, Congress never intended to authorize attorneys fees against the United States in all challenges arising under the Administrative Procedure Act which seek to modify statutorily deficient regulations through court-imposed notice and comment rulemaking. The district court is entitled to a degree of deference in its determination of the appropriateness of an award of fees. [26] Here, the district court correctly analyzed and rejected this claim and we affirm its conclusion.

### III. ATTORNEYS FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

The Equal Access to Justice Act permits an award of attorneys fees to litigants who prevail in actions against the United States, unless the position of the United States was substantially justified or circumstances indicate that an award of attorneys fees would be unjust. This provision, 28 U.S.C. § 2412(d)(1)(A), states in full:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Application for fees must be made within thirty days of final judgment. [27]

After this court remanded the case to the district court to consider whether the appellant satisfied the statutory requirements for allowing fees, the district court ruled that the appellant failed to apply for fees within the thirty-day time limit. We now

---

**22.** Appendix at 51–52, No. 81–1160.

**23.** Brief of Plaintiff-Appellant at 28–29, No. 81–1160.

**24.** *Id.* at 40 (emphasis added). We note that appellant's characterization of FOIA's role is also belied by the "freely" given admission of appellant's counsel that "they did not anticipate a fee award at the outset of this litigation." *Id.*

**25.** *E.g., National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir. 1982); *National Ass'n of Concerned Veterans v. Secretary of Defense,* 487 F.Supp. 192 (D.D.C. 1979).

**26.** *Fenster v. Brown,* 617 F.2d 740, 742 (D.C.Cir. 1979).

**27.** *See* 28 U.S.C. § 2412(d)(1)(B) (1982).

consider whether the district court erred in denying attorneys fees under the Act.[28]

A. *Effective Date of the Act*

■ The initial question which we must confront is whether the Equal Access to Justice Act applies at all to the present action. By its terms the Act pertains only to actions "pending on, or commenced on or after" 1 October 1981.[29] A party contending for attorneys fees under the Act must establish that the action was pending on this date before the Act becomes applicable.[30]

■ The appellant initiated this litigation on 13 November 1979. Two motions for summary judgment filed by HUD were denied, and on 12 September 1980 the district court granted appellant's motion for summary judgment. This ruling and the accompanying order granted to the appellant substantially all the relief which she had sought in her complaint. HUD did not challenge the court's ruling.[31]

Thus by 12 September 1980 all litigation over the legal and factual merits of the appellant's claim was terminated by the judgment in her favor. In other words, before the Act was even passed,[32] over a month before the Act became law,[33] and well over one year before the Act's effective date,[34] all litigation over the merits of

the appellant's claim had ceased. In these circumstances we must determine whether the appellant's suit was "pending" on 1 October 1981 within the meaning of the Act. After a careful reading of the language and legislative history of the Act, we hold that it was not.

In interpreting the language of the Act and applying it to this litigation we must be guided by the rule that waivers of sovereign immunity must be strictly construed. The United States is generally immune from suit except as it consents; the statutory terms governing its liability must be confined to their explicit terms.[35] Statutes subjecting the United States to liability for attorneys fees are no exception to this rule. Thus, we have held that waivers of sovereign immunity contained in attorneys fees statutes must be unequivocally expressed.[36] Great care must be taken to ensure that consent to suit is not extended beyond the literal terms of the statute.[37]

This rule protects the United States Treasury from potentially excessive liabilities which Congress did not anticipate. Although the principle requiring strict construction of waivers of sovereign immunity is not a new one, the Supreme Court has recently reaffirmed its applicability in at-

---

**28.** The appellant's petition for attorneys fees under a separate section of the Act was also denied. *See id.* § 2412(b) (subjecting the United States to liability for attorneys fees to the same extent any other party would be liable). The appellant has not appealed this ruling. Brief of Plaintiffs-Appellants at 6, Nos. 81–1160 & 83–1154 (consolidated).

**29.** Equal Access to Justice Act ("EAJA"), Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980).

**30.** *See Berman v. Schweiker,* 713 F.2d 1290, 1297 (7th Cir.1983).

**31.** HUD filed a notice of appeal but did not pursue it. HUD's motion to dismiss the appeal was granted on 9 December 1980. Although there has been some discussion as to whether "final judgment" under the Act occurs when the trial court enters its order disposing of the case on the merits or when the appeal is terminated, *e.g., McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983), we do not confront that issue here, since our analysis would not differ even accept-

ing the later date of 9 December 1980 as the point of final judgment.

**32.** *See* 126 Cong.Rec. 28,655, 28,846 (1 October 1980).

**33.** *See* 16 Weekly Comp. Of Pres. Statements 2378 (21 October 1980).

**34.** EAJA, Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980).

**35.** *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States Lines, Inc. v. Baldridge,* 677 F.2d 940, 944 (D.C.Cir.1982).

**36.** *NAACP v. Civiletti,* 609 F.2d 514, 516–18 (D.C. Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980).

**37.** *Williams v. Office of Personnel Management,* 718 F.2d 1553, 1557 (Fed.Cir.1983); *Bennett v. Department of the Navy,* 699 F.2d 1140 (Fed.Cir. 1983).

torneys fees cases, cautioning courts against enlarging these waivers beyond the explicit statutory language.[38]

Consequently, courts interpreting the Act have generally recognized the necessity of narrowly construing its terms.[39] This court is no exception. In *Action on Smoking and Health v. Civil Aeronautics Board,* we recognized that "[t]he Equal Access to Justice Act significantly abridged the government's immunity from suits for attorneys fees. As a waiver of sovereign immunity, the Act must be strictly construed."[40] It is not this court's role to assess its terms in the "spirit of . . . generosity and broad interpretation."[41] Unless "a fair reading of the language of . . . [the Act] *requires*"[42] a finding that Congress intended to subject the United States to liability for attorneys fees in cases in which the merits had been resolved prior to the Act's effective date, the courts may not entertain a petition for attorneys fees under the Act.

Examining the language of the Act, it is apparent that a fair reading of its terms does not demonstrate a congressional intent to establish liability. The Act itself offers no definition of the term "pending." One may safely assume Congress intended it to use the word in its ordinary sense. Dictionaries confirm what ordinary usage suggests: A pending matter is one which is undecided, awaiting decision or settlement;[43] a lawsuit is pending from its inception through the final judgment.[44] The complaint raised many substantive legal issues related to the merits of the case, but these issues were all finally resolved by the district court's memorandum and order of 12 September 1980. That decision essentially ended the lawsuit, since there was no longer any question about whether the appellant was entitled to all of the relief requested in the complaint. Because no appeal from that decision was prosecuted, no issue even marginally related to the merits of the suit has subsequently been subject to litigation or otherwise contested. Since there was no longer any undecided or unsettled issue in the original lawsuit, that lawsuit has not been pending from the time the district court's final order was entered.

The appellant argues that where any collateral issue, such as an attorneys fees question, remained to be decided on 1 October 1981, the entire case must still be considered "pending" under the Act. On 7 October 1980, only after all substantive issues were resolved in the appellant's favor, the appellant filed a petition for attorneys fees under FOIA. This ancillary issue was the only undetermined question when the Act became effective on 1 October 1981; the pendency of an appeal solely on the issue of attorneys fees under FOIA is now said to permit retroactive consideration of attorneys fees under the EAJA.

We do not believe the word "pending" should be interpreted as broadly as the appellant suggests. It may be that the result she urges is not explicitly ruled out by the Act. But this is not enough. As a waiver of sovereign immunity, the Act's terms must affirmatively *establish* liability, not merely fail to preclude it.[45] Any other reading would permit an abrogation of sovereign immunity without regard for the terms of the waiver which define the scope of the Government's consent to be sued.[46]

---

**38.** *Ruckelshaus v. Sierra Club,* — U.S. —, 103 S.Ct. 3274, 3276–77, 77 L.Ed.2d 938 (1983).

**39.** *Boudin v. Thomas,* 732 F.2d 1107, 1114–15 (2d Cir.1984).

**40.** 724 F.2d 211, 225 (D.C.Cir.1984) (footnote omitted).

**41.** *Phillips v. United States,* 346 F.2d 999, 1000 (2d Cir.1965).

**42.** *Ruckelshaus v. Sierra Club,* — U.S. —, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983) (emphasis added).

**43.** 7 OXFORD ENGLISH DICTIONARY 637–38 (1933).

**44.** BLACK'S LAW DICTIONARY 1021 (5th ed. 1979); BALLENTINE'S LAW DICTIONARY 929 (3d ed. 1969).

**45.** *NAACP v. Civiletti,* 609 F.2d 514, 518 (D.C.Cir. 1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980).

**46.** *Action on Smoking and Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 225 (D.C.Cir.1984).

The policies inherent in the rule requiring strict construction of waivers of sovereign immunity strongly suggest that any doubts about the scope of a waiver be resolved in favor of the narrower governmental liability.

The final order in this case issued on 12 September 1980, one year and eighteen days before the Act passed into law. Surely, Congress did not intend to saddle the Treasury with the liability for legal fees in all previously filed and resolved lawsuits in which the only remaining questions at issue were undisputably irrelevant to the conclusively decided cases in which they arose. While the dispute in this suit was pending for over one year prior to the Act's passage, there are many other fee controversies which have been pending even longer; the total number of such cases is indefinite. If liability were imposed, the financial drain on the Treasury would be staggering. The Supreme Court has noted the existence of over 150 federal fee shifting statutes.[47] Under the interpretation propounded by the appellant, the United States would suddenly become potentially responsible for attorneys fees in all fee disputes arising under any one of these statutes, even though the underlying lawsuits had been settled many months or years prior to the effective date of the Act. We cannot infer this large liability out of congressional silence as to the scope of pending cases, even when prompted by the appellant's broad interpretative innuendo, which stretches the term "pending" beyond the ordinary meaning apparent from the face of the statute.[48]

Excluding liability in this class of cases is both consistent with the statutory scheme and legislative policies of the Act, and confirmed by the considered decisions of other courts which have dealt with the issue.

The statutory scheme of the Act is a strong indicator that Congress intended the scope of liability under the Act to be narrowly interpreted. First, the Act is temporary and experimental.[49] Congress was unsure of the total liability which it was incurring. As a check on that liability it limited the retroactive and prospective availability of attorneys fees to a narrow, well-defined time period. In addition to establishing a specific start-up date of 1 October 1981, it fixed a firm cut-off date, prospectively repealing the fee shifting provisions at issue on 1 October 1984.[50] Courts must be wary about expanding that narrowly prescribed period "beyond that which was explicitly consented to by Congress."[51] Stretching the Act's effective date back over one year to accommodate the appellant's fee dispute in a finally decided case would create a wider range of liability than that envisioned or authorized by Congress.

In addition, the policies of the Act would not be served by broadly construing liability. The Act was premised on a finding that as of the time of its passage, "certain individuals ... may be deterred from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights."[52] The Act's purpose was to diminish this deterrent effect, encouraging potentially aggrieved persons to seek judicial or administrative resolution of their claims. In cases such as the appellant's, no possible deterrent could be removed by an award of attorneys fees since the appellant's case was filed, briefed, argued, and decided by a final judgment on the merits before the Act ever took effect. Thus, as of 1 October 1981 there was no actual or pending litigation to encourage. An award of attorneys fees under the Act in that situation—total-

---

47. *Ruckelshaus v. Sierra Club,* —— U.S. ——, 103 S.Ct. 3274, 3276, 77 L.Ed.2d 938 (1983).

48. *See United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980).

49. *Berman v. Schweiker,* 713 F.2d 1290, 1294 (7th Cir.1983).

50. *See* EAJA, Pub.L. No. 96–481, § 204(c), 94 Stat. 2329 (1980).

51. *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

52. EAJA, Pub.L. No. 96–481, § 202(a), 94 Stat. 2325 (1980).

ly unanticipated by the litigants and unrelated to the expressed goals of Congress—would be tantamount to a windfall.

Other courts, both in our circuit and elsewhere, have reached similar conclusions. In *Commissioners of Highways v. United States,* the Seventh Circuit clearly held that the Act does not extend to cases in which the only matter at issue on 1 October 1981 was an appeal from the denial of attorney fees.[53] Similarly, the District Court for the District of Columbia has previously held that an agency action is not "pending" when it was finally resolved prior to the Act's effective date, despite the currency of one party's unadjudicated claim for attorneys fees incurred in litigating the agency action.[54] We adhere to these rulings.

None of the other cases cited by the appellant are persuasive. She relies heavily on *Bradley v. School Board,*[55] which construed a statute enacted during the course of civil rights litigation to permit an award of attorneys fees. However, *Bradley* is readily distinguishable. The United States was not a party in that case. Because the court was not faced with a potential waiver of sovereign immunity, it broadly interpreted the Act without insisting on the ordinary rule, which it has recently reiterated,[56] requiring narrow construction of these waivers.[57]

Moreover, the statute at issue in *Bradley* was part of an entirely different legislative scheme, intended to serve other policies. That statute failed to specify an effective date, leaving entirely open the question of prospective or retroactive application from the date of enactment. In those circumstances the Court "anchor[ed]" its holding on the principle that "a court is to apply the law in effect at the time it renders its decision, *unless ... there is statutory direction or legislative history to the contrary.*"[58] Here, of course, there is a statutory expression of congressional intent limiting the Act's application to an experimental and carefully defined three-year period. This action falls within the exception contemplated by *Bradley,* and our court is not free to apply the Act to all finally decided cases currently in courts solely on attorneys fees issued as if Congress had said nothing about the retroactive reach of the Act.

Other cases relied on by the appellant for the opposite conclusion either misconstrue the holding of *Bradley,* with no analysis of the express statutory language and intent of the Act,[59] or assume that the Act *should* apply in the absence of any legislative history to the contrary, contravening the requirement that a waiver of sovereign immunity be narrowly confined to its terms.[60] Because they too willingly embrace a heavy governmental liability with little inquiry into the scope of specific congressional consent, we disagree with those cases.[61] Since Congress did not clearly waive the

---

**53.** 684 F.2d 443, 444–45 (7th Cir.1982).

**54.** *Swain v. Secretary,* 27 Fair Empl.Prac.Cas. (BNA) 1434 (D.D.C.1982), *aff'd mem. sub nom. Swain v. Lehman,* 701 F.2d 222 (D.C.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983); *cf. Tyler Business Servs., Inc. v. NLRB,* 695 F.2d 73, 76–77 (4th Cir.1982) (blocking recovery of attorneys fees in agency actions which were resolved prior to Act's effective date, although relying on a different interpretation of the Act); *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n,* 672 F.2d 426 (5th Cir.1982) (same).

**55.** 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

**56.** *Ruckelshaus v. Sierra Club,* —— U.S. ——, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

**57.** *See Commissioners of Highways v. United States,* 684 F.2d 443, 443–45 (7th Cir.1982).

**58.** 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (emphasis added).

**59.** *United States v. Heydt v. Citizens State Bank,* 668 F.2d 444, 446 (8th Cir.1982); *WATCH v. Harris,* 535 F.Supp. 9, 13–14 (D.Conn.1981).

**60.** *See Knights of the Ku Klux Klan v. East Baton Rouge Parish School Bd.,* 679 F.2d 64, 67–68 (5th Cir.1982).

**61.** *Dubose v. Pierce,* 579 F.Supp. 937 (D.Conn. 1984); *Tongol v. Usery,* 575 F.Supp. 409 (N.D. Cal.1983); *Underwood v. Pierce,* 547 F.Supp. 256 (C.D.Cal.1982).

sovereign immunity of the United States to cases which were argued and finally decided prior to 1 October 1980, we cannot hold that the appellant's case was "pending" on that date.

### B. *Substantial Justification for the Position of the United States*

Even assuming, arguendo, that this case was pending on the effective date of the Act, we would still be constrained to affirm the denial of attorneys fees under the Act. Section 2412(d)(1)(A) provides that a court shall award attorneys fees to a prevailing party *"unless* the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." [62] Before the appellant is entitled to attorneys fees under this provision, the court must first determine that the position of the United States was not substantially justified.

■ The legislative history and case law establish several guidelines in determining whether substantial justification exists. The United States, not the prevailing party, bears the burden of demonstrating substantial justification.[63] However, there is no presumption that the Government must bear attorneys fees, even when its argument on the merits is rejected.[64] Moreover, the Government need not even show that there was a substantial probability its position would prevail.[65] Rather, the statutory standard is "essentially one of reasonableness." [66] When the Government can demonstrate that the arguments it relied upon during the litigation are reasonable, then an award of attorneys fees against the Government is not appropriate under the Act.[67]

■ Applying these guidelines, it is evident that the position of HUD in this litigation was more than reasonable. After the complaint was filed, even as HUD took steps to respond to suit, several events took place which arguably resolved the controversy. First, only days after the suit was commenced, the plaintiff received notice that she continued to be eligible for a subsidy for her three-bedroom house. This removed the threat of eviction which had precipitated the action, and thus arguably mooted the entire case. A few weeks later, HUD finished and released its Section 8 Handbook, which required the authorities administering the housing subsidies (1) to give notice to tenants prior to any reduction or termination of benefits, (2) to notify tenants of the right to request an informal hearing prior to a reduction, (3) to provide such a hearing, when requested, and (4) to provide written notice of the decision after the hearing.[68] HUD also contended that this action resolved the controversy and mooted the suit, since the appellant was assured that she could receive a hearing and an opportunity to contest any future reduction in her three-bedroom subsidy by HUD.

Although the district court was not entirely persuaded by these contentions, and eventually ruled that a justiciable controversy remained, HUD's decision to respond to the changing circumstances of the lawsuit by seeking a ruling that the plaintiff's request for relief had been superseded by

---

62. 28 U.S.C. § 2412(d)(1)(A) (1982).

63. *Dougherty v. Lehman,* 711 F.2d 555, 561 (3d Cir.1983); H.R.REP. No. 1418, 96th Cong., 2d Sess. 10–11 (1980), U.S.Code Cong. & Admin. News 1980, p. 4953.

64. *Wolverton v. Heckler,* 726 F.2d 580, 583 (9th Cir.1984); H.R.REP. No. 1418, 96th Cong., 2d Sess. 11 (1980).

65. *Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 716 F.2d 915, 920 (D.C.Cir.1983) (per curiam); H.R.REP. No. 1418, 96th Cong., 2d Sess. 11 (1980).

66. H.R.REP. No. 1418, 96th Cong., 2d Sess. 10 (1980).

67. *Martin v. Lauer,* 740 F.2d 36, 43 (D.C.Cir. 1984); *Spencer v. NLRB,* 712 F.2d 539, 557–58 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

68. Appendix at 63, No. 81–1160.

out-of-court events was entirely justified. Without relitigating the merits of the mootness issue here, since a full-blown reappraisal of the district court's ruling on the merits would be unnecessarily duplicative,[69] the circumstances of this litigation, as found in the record and relevant documents filed before this court and the district court,[70] clearly support the existence of a plausible mootness claim which a prudent attorney would have been well-advised to consider raising on behalf of a client. The Government need not show that its litigation position was substantially likely to prevail. Thus, even if it could be said that the claim of mootness may not have had a strong probability of success, its assertion was nonetheless a legitimate response to the definite and extensive relief accorded by the agency itself to the appellant after the lawsuit's inception.[71]

The appellant makes much of HUD's decision not to file a written opposition to the appellant's own motion for summary judgment, suggesting that this constitutes an admission that HUD's position was unreasonable and unjustified. However, HUD did oppose the appellant's motion for class certification. A court ruling denying the motion for certification and dismissing the suit on mootness grounds would have completely terminated the litigation in favor of HUD. The appellant ignores this litigation strategy, impliedly suggesting that it was improper for HUD to raise the threshold issue of mootness when the strength of the defendant's case on the merits may have been put in doubt.

We do not believe it was imperative for the Government to concede the entire lawsuit as the appellant urges.[72] The defense of mootness was raised while the Govern-

ment was formulating policies intended to accord relief to the appellant and her class, an intention carried out in full. "Taking action in court designed to lead to a dissolution of the dispute without testing the ultimate legal merits of the complaint is plainly a litigation position" which may be substantially justified.[73] It has never been doubted that "[t]hreshold or 'technical' defenses ... on such grounds as jurisdiction, finality, standing, or statute of limitations ... may ... make out a case with a reasonable, or substantially justified, basis in law ...."[74]

■ Moreover, an arguable claim that a particular controversy is moot, or otherwise nonjusticiable, can and should be pressed independently of the legal merits of the defendant's position, at least when the courts' Article III jurisdiction is at issue. Just as two parties cannot by consent confer subject matter jurisdiction on a court, our court cannot reach the merits of a controversy—no matter how clear the proper result on the merits of the case would be—when it is moot or the court would otherwise lack jurisdiction under Article III. Our judicial system relies on the advocacy of the parties to frame the dispositive issues clearly. Consequently, when the circumstances of a particular lawsuit suggest to a defendant that the case could be moot, regardless of the strength of its other defenses, that party may properly— some argue *should*—raise and argue the issue before the courts. This appears to have been the position taken by HUD in this case. Although it chose not to rely on legal arguments on the merits which it could have raised in its defense, it did assert that the controversy had become moot.

---

**69.** *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

**70.** *Dougherty v. Lehman,* 711 F.2d 555, 562 (3d Cir.1983).

**71.** *See Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 716 F.2d 915, 920 (D.C.Cir.1983) (per curiam) (Government

need not establish that its position had a substantial probability of prevailing).

**72.** *See Del Mfg. Co. v. United States,* 723 F.2d 980, 985 (D.C.Cir.1983).

**73.** *Id.* at 984 n. 10.

**74.** *Id.* at 988 (Wald, J., dissenting).

When, as here, the claim of nonjusticiability was itself sound and reasonable, the Government's position should not be penalized as unjustified.

Although not ultimately prevailing, the Government's position throughout the litigation, from the filing of the complaint through the final judgment, was substantially justified. Thus, an award of attorneys fees against HUD is not authorized under the Act.

### IV. CONCLUSION

Under the American Rule prevalent in our courts, the expense of attorneys fees has traditionally been borne by the lawyer's own client, not the opposing litigant. For better or worse, that general rule applies today.[75] Although fee shifting statutes contained in the Freedom of Information Act and the Equal Access to Justice Act provide broad exceptions to this rule, they remain only that—congressionally limited exceptions which do not apply in every situation.

Since prevailing in her basic lawsuit nearly four years ago, the appellant in this case has cast about for an applicable exemption from the general rule, first under FOIA, and later under the EAJA as the likelihood of success under FOIA faded. After closely reviewing the stack of filings, briefs, and arguments on attorneys fees which have accumulated during the process of hearing and appeal, and which dwarf those papers relating to the merits of the appellant's claim, it is evident that the general rule applicable to the typical litigant continues to apply in this case, requiring the appellant to bear the cost of her own attorneys. Her action seeking protection from any reduction of Section 8 housing subsidies without the benefit of asserted procedural due process rights is demonstrably not one arising under FOIA. Commenced, argued, and resolved more than

one year prior to the effective date of the EAJA, it certainly was not "pending" on that date. Neither can it be said that HUD's position, although eventually rebuffed, was without substantial justification. Under these circumstances, we must uphold the district court's decisions denying attorneys fees under the Equal Access to Justice Act and the Freedom of Information Act.

*Affirmed.*

MIKVA, Circuit Judge, concurring in part, dissenting in part.

I concur in the result of this case and concur in the reasoning articulated in Parts II and IIIB.

I cannot concur, however, in the reasoning of Part IIIA and therefore dissent from that section. I believe that *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), requires us to hold that the Equal Access to Justice Act applies to this suit. *Bradley* squarely held that the question of fees was sufficient to keep a case open for the purpose of applying another fee statute passed by Congress. *See also Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 679 F.2d 64 (5th Cir.1982); *Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982). I would therefore reverse the district court on this issue.

---

75. *Spencer v. NLRB,* 712 F.2d 539, 543–46 (D.C. Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).