**CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.,**
Appellants,

v.

**Donald T. REGAN, Secretary of the Treasury, et al.**

No. 83–1988.

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 1986.

Decided September 26, 1986.

---

Bruce Silverglade, Washington, D.C., and Mitchell Zeller, for appellants.

Marleigh D. Dover, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees. Nicholas S. Zeppos, Atty., Department of Justice, Washington, D.C., also entered an appearance for appellees.

Before ROBINSON and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

The Center for Science in the Public Interest (CSPI) appeals from a denial of attorneys' fees under the Equal Access to Justice Act. 28 U.S.C. § 2412 (1982). For the reasons that follow, we hold that, in determining whether the Government's position was "substantially justified" within the meaning of the statute, the District Court is now obliged to apply the standard set forth in the 1985 Amendments to the Act.

I

The underlying litigation that gave rise to the present fee proceeding concerns the Secretary of the Treasury's decision to rescind a regulation requiring the labeling of ingredients contained in alcoholic beverages. The regulatory odyssey began in 1974, when the Bureau of Alcohol, Tobacco, and Firearms (BATF) published proposed regulations requiring ingredient labeling for distilled spirits, wine, and malt beverages. After several hearings, the agency withdrew the proposed regulations. 40 Fed. Reg. 52,613 (1975). Several years later, in 1979, a Notice of Proposed Rulemaking to require partial ingredient labeling of alcoholic beverages was issued, 44 Fed.Reg. 6740 (1979); then, in 1980, the regulation was promulgated in final form. Under the terms of the regulation, alcoholic beverage labels were, beginning in 1983, to disclose either the essential ingredients or an address where such information could be obtained. T.D. ATF–66, 45 Fed.Reg. 40,538 (1980). Prompted by Executive Order 12291 directing federal agencies to review existing regulations, see 46 Fed.Reg. 13,193

(1981), BATF in 1981 proposed rescission of the ingredient labeling rule. 46 Fed. Reg. 24,962 (1981). Based upon comments received, as well as the record of the earlier proceedings, the agency rescinded the requirement. T.D. ATF–94, 46 Fed.Reg. 55,039 (1981).

CSPI thereupon filed suit in the United States District Court for the District of Columbia, contending that the rescission violated the Federal Alcohol Administration Act, 27 U.S.C. §§ 201–12 (1982) (FAA Act). In CSPI's view, that statute required BATF to promulgate ingredient labeling regulations which "provide the consumer with adequate information as to the identity and quality of the products." *Id.* at 205(e)(2). In addition, CSPI challenged the adequacy of the agency's statement of basis and purpose for rescinding the rule. *See* 5 U.S.C. § 553(c) (1982).

Defending the rescission, the Treasury Department maintained that it enjoyed wide discretion with respect to its rulemaking authority and that the FAA Act did not mandate ingredient labeling; in addition, the agency argued that the rescission was supported by substantial evidence. These arguments proved unavailing, however, as the District Court granted summary judgment in favor of CSPI, ruling in pertinent part that the rescission was not accompanied by an adequate statement of basis and purpose and that the rescission violated Congressional intent. The court ordered reinstatement of the rule. *Center for Science in the Public Interest v. Department of the Treasury,* 573 F.Supp. 1168 (D.D.C. 1983). The reinstatement order was subsequently vacated on appeal, but the District Court's ruling invalidating the rescission itself was never appealed. This court declined to vacate that order under *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), because appellate review was prevented "not by 'happenstance,' but by the deliberate action of the losing party." In addition, the Department had promulgated a second rescission which, this court determined, mooted further consideration of its prior action. *Center for Science in the Public Interest v. Regan,* 727 F.2d 1161, 1165–66 (D.C.Cir. Feb. 7, 1984, as amended Mar. 1, 1984).[1]

After the District Court's order granting summary judgment, CSPI in March 1983 filed a timely application for attorneys' fees under the Equal Access to Justice Act (EAJA). Citing this court's decision in *Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir. 1983), the District Court ruled that the Government's litigation position was substantially justified and thus denied CSPI's request. *Center for Science in the Public Interest v. Department of the Treasury,* Civil No. 82–610 (D.D.C. July 8, 1983). This appeal followed. Consideration of the appeal was held in abeyance pending Congress' action on proposed amendments to and extension of the EAJA, which were thereafter enacted and signed into law. The parties thereupon filed supplemental briefs addressing the question whether, in view of the statutory amendments, the "position" of the United States should now be interpreted to include the agency's pre-litigation position.

Thus, the threshold question presented, and indeed the only question we reach, concerns the proper standard for determining whether the position of the Government was "substantially justified" within the meaning of the EAJA. In this circuit, the "position" of the Government for purposes of the pre–1985 EAJA has been construed to mean only its position in the litigation, which in this case means the arguments advanced by the agency's counsel in the litigation defending the rescission. *Spencer v. NLRB,* 712 F.2d at 557.

The amended EAJA, however, now provides that the "position" of the United

---

**1.** This court observed, however, that the District Court's holding on these issues would have preclusive effect should they arise in litigation of the second rescission. 727 F.2d at 1166, 1168. The District Court subsequently vacated the second rescission of the ingredient labeling rule upon CSPI's challenge; this court reversed the District Court on appeal. *Center for Science in the Public Interest v. Department of the Treasury,* 797 F.2d 995 (D.C.Cir.1986).

States includes not only its litigation position but also "the action or failure to act by the agency upon which the civil action is based." Pub.Law No. 99–80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985). Section 7 of the 1985 Amendments states that, except as otherwise provided "the amendments ... shall apply to *cases pending* on or commenced on or after the date of the enactment of this Act," that is, August 5, 1985.[2] Pub.L. No. 99–80, § 7(a), 99 Stat. at 186 (emphasis added). This litigation was, all agree, pending on that date. It is also clear that if the merits portion of this case had been pending on August 5, 1985, the new EAJA standard would apply. The issue before us is whether the statutory term, "cases pending," was intended to encompass pending fee applications or was, instead, limited to cases pending "on the merits."

## II

■ It is axiomatic that statutory interpretation begins with the language of the statute itself. But we do not merely start with the statute. Absent "clear evidence," *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980), of a "clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive," *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *United States v. Locke,* 471 U.S. 84, 105

S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985); *Bread Political Action Committee v. FEC,* 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982). As the Supreme Court has recently reiterated, "[d]eference to the supremacy of the legislature, as well as recognition that congressmen typically vote on the language of a bill, generally require us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used.' " *Locke,* 105 S.Ct. at 1793 (quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). As the Court admonished, " 'going behind the plain language of a statute in search of a possible contrary congressional intent is "a step to be taken cautiously" even under the best of circumstances.' " *Id.* (quoting *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) and *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)).[3]

The statute before us is exclusively concerned with attorneys' fees and fee petitions; as a result, the plain meaning of "cases pending" in specifying the effective date of the fee statute "presumably would be commonly understood to include pending fee applications." *Trahan v. Regan,* 625 F.Supp. 1163, 1164 (D.D.C.1985). As the Fifth Circuit aptly put it in addressing this issue, "[t]he phrase 'cases pending' makes no distinction between the fee application stage of a case and consideration of

2. Section 7 of the Amendments provides:
   (a) IN GENERAL—Except as otherwise provided in this section, the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act.
   (b) APPLICABILITY OF AMENDMENTS TO CERTAIN PRIOR CASES—The amendments made by this Act shall apply to any case commenced on or after October 1, 1984, and finally disposed of before the date of the enactment of this Act, except that in any such case, the 30–day [filing] period ... shall be deemed to commence on the date of the enactment of this Act.
   This case does not fall within the exceptions provided in section 7. Section 7(b) contains a saving clause for cases commenced after the expiration date of the original EAJA, October 1,

1984, but "finally disposed of" before enactment of the amendments. Because such cases would not have given rise to entitlement to fees under the original EAJA, the new EAJA gives all such parties a post-enactment 30–day period in which to file fee petitions.

3. The EAJA is, of course, not entrusted by Congress to an expert agency for interpretation. It is a generic statute applicable in federal courts when a private party who satisfies the several enumerated criteria prevails in civil litigation against the United States. No argument is thus made that the deference principles enunciated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), are triggered under these circumstances.

the merits." *Russell v. National Mediation Board*, 775 F.2d 1284, 1286 (5th Cir. 1985); *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1578 (Fed.Cir. 1986). Both stages of litigation would seem to be encompassed by the statutory term. At all events, no such distinction is to be found in the language of the statute itself.

Numerous decisions from other circuits are in accord with this straightforward reading of the statute. *McQuiston v. Marsh*, 790 F.2d 798, 800 (9th Cir.1986) (1985 Amendments held to apply to pending fee petition); *Gavette*, 785 F.2d at 1578 & n. 62 (same); *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1270 n. 1 (7th Cir.1986) (same); *Trust Co. of Columbus v. United States*, 776 F.2d 270, 271–72 & n. 1 (11th Cir.1985) (same); *Russell*, 775 F.2d at 1286–87 (same); *accord Trahan*, 625 F.Supp. at 1166 & n. 4 (same); *see Fulton v. Heckler*, 784 F.2d 348, 349 (10th Cir.1986) (court applied new EAJA definition of "position" to case in which only fee application remained pending; no discussion of effective date); *Herring v. United States*, 781 F.2d 119, 120 (8th Cir.1986) (court applied new EAJA to pending fee petition without discussion); *United States v. Yoffe*, 775 F.2d 447, 448–49 (1st Cir.1985) (court applied new EAJA definition of "position" to pending fee petition without discussion). *Cf. American Pacific Concrete Pipe Co., Inc. v. NLRB*, 788 F.2d 586, 588–90 (9th Cir.1986) (court declines to apply new EAJA net worth ceiling to pending fee petitions; distinguishes *Russell* on grounds that new "position" definition was a clarification, and not a change in law).

---

4. Rep. Kastenmeier continued:
   This bill would also apply to any case commenced on or after October 1, 1984, and finally disposed of before the date of the enactment of this bill, and in that case the 30–day period [for filing fee petitions] shall be deemed to commence on the date of enactment of this bill. If a fee case is complete and a fee petition has been fully adjudicated before the date of enactment, with no further appeal pending on the date of enactment, the case may not, [of] course, be reopened....
   131 Cong.Rec. H4762 (daily ed. June 24, 1985).

## III

Finding no solace in the statutory language, the Department invokes one portion of the legislative history to support its interpretation. Specifically, the Department relies upon a portion of the floor statement by Rep. Kastenmeier, a co-sponsor of the 1985 Amendments and clearly an important actor in the Congressional deliberations. In an effort to clarify the effective date provisions of the new Amendments, Rep. Kastenmeier said:

> Cases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill. This bill would apply to any case pending on October 1, 1984, and finally disposed of before the date of enactment of this bill, if the time for filing an application for fees and other expenses had not expired as of such date of enactment.

131 Cong.Rec. H4762 (daily ed. June 24, 1985).[4]

The Department contends that Rep. Kastenmeier's explanation means that all *fee* proceedings pending on October 1, 1984 would be excluded from the new Act, because the time for filing the fee application would necessarily have expired well before the date of enactment of the revised EAJA.

Taking Rep. Kastenmeier's statement alone, the Department arguably finds support for its position as to which version of the EAJA applies.[5] This case might plausibly be viewed as falling within the first of the two sentences quoted above. This fee

---

5. Of course, this is not to say that *Spencer's* interpretation of "position" of the United States would necessarily control. As we discuss in the text below, the legislative history suggests that certain portions of the 1985 Amendments, including the rejection of *Spencer's* definition of "position," were intended to "clarify" the original Act and were thus to be applied retroactively. *See also Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

application proceeding, which fits within Rep. Kastenmeier's description of "cases which are pending," was underway and thus "pending" on October 1, 1984. But setting aside for a moment whether Congress intended the "original act" to encompass the agency's pre-litigation position, *see supra* note 5, and accepting *arguendo* the Government's reading of the floor statement, we nonetheless approach such statements with caution, mindful of the Supreme Court's admonition that the contemporaneous remarks of a single legislator, even a sponsor, are not controlling in legislative history analysis; rather, those remarks must be considered along with other statements and published committee reports. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 118, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979)). Caution is particularly in order here since Rep. Kastenmeier's statement, as we read it, drew a distinction which has no basis in the statutory language itself.[6] Specifically, his statement by its terms creates a distinction among "cases which are pending" on October 1, 1984—that is, a distinction between cases pending on that date where the time for filing the fee application had expired before

the date of enactment of the amended statute, and cases pending on October 1, 1984 where the time for filing a fee application had not expired as of the enactment date. The Congressman's explanatory statement thus seems to incorporate into section 7(a) of the revised statute a date found only in section 7(b), *see supra* note 2; it is only in the latter subsection that the date October 1, 1984 appears, for the purpose of "saving" a narrow category of otherwise "closed" cases.[7]

■ There is another difficulty as well. Both the House Report and the floor statements of various proponents of the bill were replete with language emphasizing that the expanded definition of "position" of the Government was intended to "clarify" existing law by resolving a split in the circuits over the proper interpretation of that term.[8] H.R.Rep. No. 120, 99th Cong., 1st Sess. 7, 9, 11–12, 16, 21 (1985), U.S.Code Cong. & Admin.News 1985, pp. 132, 135, 137, 139–141, 144, 149; *see also* Statement of Rep. Kastenmeier, 131 Cong.Rec. H4726 (daily ed. June 25, 1985); Statement of Senator Grassley, 131 Cong.Rec. S9992 (daily ed. July 24, 1985); Statement of Sen. Thurmond, *id.* at S9993; Statement of Sen. Heflin, *id.* at S9994; Statement of Sen.

---

**6.** When held up to the statutory language, Rep. Kastenmeier's statement does not support the Department's proposed distinction between pending merits proceedings and pending fees petitions. At best, the only ambiguity in the statute is the compass of the term, "cases pending"; yet, Rep. Kastenmeier's remarks reflect no such ambiguity. Indeed, Rep. Kastenmeier did not distinguish pending fee petitions from other pending cases; to the contrary, his interpretation covered all "cases which were pending, *including* fee application proceedings." 131 Cong.Rec. H4762 (daily ed. June 24, 1985) (emphasis added).

**7.** Because the Amendments were not adopted until almost a year after the original EAJA had expired, Congress apparently wished to "save" all cases initiated on or after the expiration date of the old EAJA but resolved before the Amendments were adopted. The method employed for saving such cases was to provide litigants with a new opportunity to file for fees. Section 7(b) so provides. *See supra* note 2. Although cases filed on or *after* October 1, 1984 could thus be "re-opened" for fee purposes even after the orig-

inal 30-day period had expired, Congress did not wish to permit the reopening of *closed* cases filed prior to October 1, 1984 and thus under the old Act.

**8.** In examining Rep. Kastenmeier's statement in light of the House Report, the Fifth Circuit in *Russell v. National Mediation Board,* observed:

 Representative Kastenmeier does not address the distinction in the House Report between provisions that "clarify existing law" and those that "expand or otherwise change existing laws." ... Thus we cannot be sure whether Representative Kastenmeier's reference to the "original act" means the Act as "clarified" by the new amendments or the Act as interpreted by the courts before the amendments were enacted. We doubt, however, that he intended courts with fee applications pending to disregard the clarifying provisions of the new Act in defining the terms of the original EAJA.

775 F.2d at 1287 (citation omitted).

Weicker, *id.* at S9995; Statement of Sen. Domenici, *id.* at S9998. Likewise, in describing section 7 of the Act, the House Report stated: "[T]he amendments made by this Act shall apply in cases pending on or commended [sic] on or after the date enactment. To the extent that amendments made by this Act merely clarify the original Congressional intent in EAJA *these amendments will have the effect of informing judicial construction of pre-1985 provisions of EAJA with respect to pending cases."* H.R.Rep. No. 120, 99th Cong., 1st Sess. at 21, U.S.Code Cong. & Admin.News 1985, p. 149 (emphasis added). The Report further stated: "The changes which are made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981." *Id.* at 11, U.S.Code Cong. & Admin.News 1985 p. 139.[9] This likewise suggests that the now-operative definition of "position"

of the United States was meant to apply retroactively.[10] We conclude, by virtue of the plain meaning of the statute and the clear intent of Congress to clarify this portion of the statute, that the pivotal term, "cases pending," encompasses fee applications such as that before us.[11]

## IV

In light of Congress' not having acted at the time of its decision, the District Court quite properly relied exclusively upon *Spencer* in addressing the question whether the Government's "position" was substantially justified. We do not reach the ultimate issue in this case of whether the "position" of the Government, as defined by the revised EAJA, met the statutory standard. Instead, we remand the case for the District Court to evaluate the Government's pre-litigation position in the underlying agency action (since the trial court has

**9.** This passage continues, "[h]owever, changes which are made by H.R. 2378 and which expand or otherwise change existing law shall take effect on the date of enactment and shall apply to matters pending on or commenced after that date." H.R.Rep. No. 120, 99th Cong., 1st Sess. 11 (1985), U.S.Code Cong. & Admin.News 1985, p. 139; *see American Pacific Concrete Pipe Co.,* 788 F.2d at 588–90.

**10.** We are aware that, in a footnote in our decision in *Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066, 1068–9 n. 17 (D.C.Cir.1985), we stated that that case was governed by the old EAJA rather than the new Amendments because the petitioner had "filed its action before October 1, 1984." We are persuaded, upon analysis, that the statement was in error; the date of filing has no significance in determining whether the Amendments apply to a pending case. *See* Pub.L. No. 99–80, § 7(a), 99 Stat. at 186. In any event, that statement was clearly dicta; the decision in *Massachusetts Fair Share* did not turn on whether the old or new EAJA was applied. We held there that the outcome would be the same under either the *Spencer* analysis of "substantial justification" under the old EAJA or under the "clarified" definition articulated in the Amendments. 776 F.2d at 1068–69 n. 17. Because our analysis departs from the statement in *Massachusetts Fair Share,* our holding on this issue has been considered and approved by the full court and thus constitutes the law of the Circuit. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981); *see also Commodity Futures*

*Trading Comm'n v. Nahas,* 738 F.2d 487, 496 n. 19 (D.C.Cir.1984).

**11.** The Department argues that application of the new EAJA definition of "position" is a retroactive application of a new standard of liability and is thus a waiver of sovereign immunity which must be strictly construed. *See Nichols v. Pierce,* 740 F.2d 1249, 1258 (D.C.Cir.1984). As a consequence, Treasury contends, "pending" cases cannot be said to include cases where the only matter pending is the fee petition, absent unequivocal statutory language to that effect. The Government relies upon a series of cases holding that pending cases under the original EAJA did not include cases in which attorneys' fees were the only matter left to be resolved. *See, e.g., Nichols,* 740 F.2d at 1258. But the concerns which prompted the courts to decline to apply retroactively the original EAJA to cases which were closed save for the fee petition are inapplicable in the context of the application of the new definition of "position" under the new Amendments. By virtue of the original EAJA, the Government has already expressly waived sovereign immunity from attorneys' fees in this case. The EAJA is no longer "temporary and experimental," *Nichols,* 740 F.2d at 1257, but has been made permanent by the Amendments. It also cannot reasonably be argued that, prior to 1985, the Government had waived immunity only to the extent of the standard of liability reflected in the *Spencer* line of cases since the circuits were deeply divided on the interpretation of the "position" of the agency under the pre–1985 EAJA.

already ruled favorably to the Government on its litigation position). In so doing, we intimate no view as to whether Treasury's position, either in the underlying rescission or in the subsequent litigation, was substantially justified.[12]

*It is so ordered.*

---

**12.** Although the issue whether the Government's litigation position was "substantially justified" has been briefed, the focus of this appeal has shifted, as reflected by oral argument and the supplemental briefing, to the statutory interpretation question. We therefore believe that the more orderly course is to remand the case to the District Court without opining on that question so that, should there be a subsequent appeal, both issues can be addressed in the same proceeding.