George **SHULTZ, Secretary of State,**
**et al., Appellants,**

v.

James D. **CROWLEY, et al.**

No. 84–5667.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 12, 1985.

Decided Sept. 18, 1986.

Rehearing Denied Dec. 12, 1986.

John Oliver Birch, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellants.

Lawrence Speiser, with whom John P. Racin, Washington, D.C., was on the brief, for appellees.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion of the Court filed by Circuit Judge SCALIA.

Dissenting Opinion filed by Senior Circuit Judge MacKINNON.

SCALIA, Circuit Judge:

The government appeals an order awarding appellees attorney's fees under § 204 of the Equal Access to Justice Act ("EAJA"), Pub.L. No. 96–481, 94 Stat. 2321, 2325, 2327 (1980), amended by Act of August 5, 1985, Pub.L. No. 99–80, 99 Stat. 183, 184–87 (current version at 28 U.S.C.A. § 2412 (West Supp.1986)). The principal question on appeal is whether this suit was pending on the effective date of the EAJA.

I

In 1974, appellees filed a class action against the Secretary of State, challenging the legality of a State Department employment practice. Plaintiffs requested declaratory, monetary, and injunctive relief, costs including reasonable attorney's fees, and such further relief as is just and proper. Complaint 23–25. In 1977, the District Court granted partial summary judgment to the class, declaring the challenged practice unlawful and enjoining its continuation. *Crowley v. Kissinger*, Civil Action No. 74–494 (D.D.C. June 24, 1977) (Memorandum). The parties then stipulated that individual claims would be considered by a Special Master, whose recommendations would be appealable to the District Court. Stipulation of Claim Procedures and Consent Order, *Crowley v. Vance*, Civil Action No. 74–494 (D.D.C. filed Nov. 1, 1978). On May 22, 1980, the District Court adopted the Special Master's recommendations as to

the entitlement of various class members to monetary relief and his conclusion that class members were eligible for attorney's fees under the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii)(1982). *Crowley v. Muskie,* 496 F.Supp. 360 (D.D.C.1980). On July 21, 1980, the government filed a notice of appeal from the District Court's decision, but that appeal was later dismissed on the government's motion. *Crowley v. Muskie,* No. 80–1849 (D.D.Cir. Sept. 12, 1980) (Memorandum). Soon after, appellees filed an application for an award of attorney's fees and costs. Application for Attorney's Fees and Expenses, *Crowley v. Muskie,* Civil Action No. 74–494 (D.D.C. filed Sept. 26, 1980). The District Court eventually granted the application. *Crowley v. Haig,* Civil Action No. 74–494 (D.D.C. Sept. 15, 1981), *amended* (D.D.C. Sept. 25, 1981), *partial relief granted* (D.D.C. Dec. 9, 1981). The government appealed, *Crowley v. Haig,* Civil Action No. 74–494 (D.D.C. filed Nov. 16 & Dec. 15, 1981), and this court reversed the award, holding that appellees were not entitled to attorney's fees under the Back Pay Act, *Crowley v. Shultz,* 704 F.2d 1269 (D.C.Cir.1983). Appellees then applied to the District Court for attorney's fees under the EAJA. Motion for Attorneys Fees and Costs Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), *Crowley v. Shultz,* Civil Action No. 74–494 (D.D.C. filed June 13, 1983). The District Court held that appellees were entitled to attorney's fees, *Crowley v. Shultz,* Civil Action No. 74–494 (D.D.C. May 16, 1984) (Memorandum), and subsequently fixed the amount of those fees, *Crowley v. Shultz,* Civil Action No. 74–494 (D.D.C. July 23, 1984) (Memorandum). This appeal followed.

## II

The government's principal argument is that appellees are ineligible for attorney's fees under the EAJA because their suit was not pending on October 1, 1981, the effective date of the Act. Pub.L. No. 96–481, § 208, 94 Stat. 2321, 2330 (1980). The government's argument is correct if two premises are true. The first is that a suit

is not pending within the meaning of the EAJA when it has been finally resolved on the merits and only collateral issues, like the availability or amount of attorney's fees, remain to be resolved. As appellees concede, this court has already accepted that premise, in *Nichols v. Pierce,* 740 F.2d 1249 (D.C.Cir.1984), a case decided after the District Court decisions at issue in this appeal. Thus, all that remains is to determine the accuracy of the government's second premise, *i.e.,* that only collateral issues remained in this case on October 1, 1981.

The last order on the merits in this case was issued on May 22, 1980, when the District Court adopted the conclusions and recommendations of the Special Master regarding the entitlement of various class members to individual monetary relief. *Crowley v. Muskie,* 496 F.Supp. 360 (D.D.C.1980). Although the government appealed this order, it voluntarily withdrew its appeal on September 12, 1980, over a year before the effective date of the EAJA. *Crowley v. Muskie,* No. 80–1849 (D.C.Cir. Sept. 12, 1980). There has been substantial litigation since then, but it has concerned only attorney's fees. It would thus appear that *Nichols* controls this case, and that appellees are not entitled to an award of attorney's fees. Appellees nevertheless argue that this case was pending on October 1, 1981 within the meaning of the EAJA as interpreted in *Nichols,* because the District Court's order of May 22, 1980 left unresolved the amount of the attorney's fees award to which it held appellees were entitled under the Back Pay Act. Since that order did not dispose of the "whole case," appellees reason, it was merely "collateral," and the government could have appealed the merits of the case for sixty days after the date on which the amount of the award was fixed (and thus the "whole case" decided). Since the amount of the award was fixed on September 15, 1981, they conclude that this suit was pending on October 1, 1981, the effective date of the EAJA.

The government did not appeal on the merits, however, instead appealing only the

District Court's attorney's fees determinations. *See Crowley v. Shultz*, 704 F.2d 1269 (D.C.Cir.1983). Thus, appellees' argument rests on the implicit assumption that a case in which an appeal on the merits *could* have been brought after the effective date of the EAJA was pending on that date even if no appeal on the merits was *actually* brought. Our decision in *Nichols* casts substantial doubt on this proposition. *See* 740 F.2d at 1256. *But cf. Massachusetts Union of Public Housing Tenants v. Pierce*, 755 F.2d 177, 179–80 (D.C.Cir.1985).

Even granting that assumption, however, the appellees' argument also rests upon another assumption: that the pendency of an unresolved request for attorney's fees normally affects the appealability of an order finally disposing of the merits of the case. The sole support appellees adduce for this proposition is *Crowley v. Shultz*, 704 F.2d 1269 (D.C.Cir.1983), our earlier decision in this case. In *Crowley*, the government, appealing from an order determining the amount of the fee award to which plaintiffs had previously been held to be entitled under the Back Pay Act, sought to challenge not only the amount but also the entitlement. The plaintiffs argued that we lacked jurisdiction to consider the entitlement question, since the government had not brought a separate appeal from the earlier District Court order deciding that issue. We rejected that argument, holding that an order determining that a party is entitled to a fee award but not fixing the amount of the award is properly challenged on an appeal from the later order fixing the size of the amount. *Id.* at 1271–72. That conclusion simply sheds no light at all on the very different question presented by this appeal, *i.e.*, whether on order finally resolving the merits of a case is properly challenged on appeal from a later order finally resolving pending attorney's fees issues.

This latter question was once the source of substantial confusion and disagreement among the federal circuits. *See, generally* Green, *From Here to Attorney's Fees: Certainty, Efficiency, and Fairness in the Journey to the Appellate Courts*, 69 CORNELL L.REV. 207, 224–26 (1984) (hereinafter Green, *From Here to Attorney's Fees*). This confusion, however, has been greatly reduced by the Supreme Court's decision in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). The precise question posed in *White* was whether a postjudgment request for attorney's fees under 42 U.S.C. § 1988 (1982) was a motion to alter or amend the judgment subject to FED.R. CIV.P. 59(e), which requires that such motions be filed within ten days of the entry of judgment. The Court answered this question in the negative, relying on the following propositions: Rule 59(e) was intended to apply only to requests for reconsideration of "matters properly encompassed in a decision on the merits"; "a request for attorney's fees under § 1988 raises legal issues collateral to" and "separate from" the decision on the merits—issues that cannot be resolved until after one party has finally prevailed on the merits; and attorney's fees therefore are distinguishable from other forms of judicial relief.[1] *White*, 455 U.S. at 451–52, 102 S.Ct.

---

1. Although the *White* Court had before it only a request for fees brought under 42 U.S.C. § 1988, its reasoning applies with full force to fee requests brought under the many similar statutory provisions authorizing courts to award attorney's fees to prevailing parties in appropriate circumstances—like the Back Pay Act, *see* 5 U.S.C. §§ 5596(b)(1)(A)(ii), 7701(g)(1) (1982), which is the provision at issue in this case. Subsequent cases have uniformly interpreted *White* to be fully applicable to such statutes, *see infra* pages 504–05, and we agree with this interpretation. We do note, however, that a number of courts have expressed the view that *White* is not directly applicable to requests for attorney's fees predicated upon nonstatutory sources of authority, *e.g.*, contractual agreements, which are thought to raise issues not raised by statutory fee requests. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees*, 776 F.2d 1563, 1563–64 (2d Cir.1985) (per curiam); *Bank South Leasing, Inc. v. Williams*, 769 F.2d 1497, 1499–1500 (11th Cir.1985) (per curiam). *But see, e.g., Exchange National Bank v. Daniels*, 763 F.2d 286, 292–94, *modified on other grounds*, 768 F.2d 140 (7th Cir.1985). *See generally* Green, *From Here to Attorney's Fees*, 69 CORNELL L.REV. at 278–301. We limit our

at 1166–67. As the *White* Court itself realized, one necessary consequence of characterizing requests for statutory attorney's fees as separate from and collateral to judgments on the merits is that the pendency of such requests can have no effect on the finality (and thus the appealability) of a judgment finally disposing of the merits of a case. *Id.* at 452–53 n. 14, 102 S.Ct. at 1167 n. 14 ("[T]he collateral character of the fee issue *establishes* that an outstanding fee question does not bar recognition of a merits judgment as 'final' and 'appealable.'") (emphasis added) (citing *Obin v. District No. 9, International Association of Machinists & Aerospace Workers,* 651 F.2d 574, 584 (8th Cir.1981)).

The Supreme Court's clear signal in *White* did not go unheeded; with only one exception of which we are aware,[2] every subsequent circuit court decision that has faced the question (even those decided by circuit courts that had reached a different conclusion prior to *White*) has held that an order finally disposing of the merits of a case is final and appealable notwithstanding the pendency of an unresolved request for statutory attorney's fees. *See, e.g., Crossman v. Maccoccio,* 792 F.2d 1, 2–3 (1st Cir.1986) (per curiam); *Ellender v. Schweiker,* 781 F.2d 314, 317 (2d Cir.1986); *Art Janpol Volkswagen, Inc. v. Fiat Motors of North America, Inc.,* 767 F.2d 690, 696–97 (10th Cir.1985); *Exchange National Bank v. Daniels,* 763 F.2d 286, 292–94, *modified on other grounds,* 768 F.2d 140 (7th Cir.1985); *Morgan v. Union Metal Manufacturing,* 757 F.2d 792, 794–95 (6th Cir.1985); *World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1471 (10th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985); *EEOC v. Gaddis,* 733 F.2d 1373, 1375–76 (10th Cir.1984); *International Association of Bridge Ironworkers v. Madison Industries,* 733 F.2d 656, 659 (9th Cir.1984); *Bernstein v. Menard,* 728 F.2d 252, 253 (4th Cir.1984); *West v. Keve,* 721 F.2d 91, 95 (3d Cir.1983); *Abrams v. Interco Inc.,* 719 F.2d 23, 26–27 (2d Cir.1983); *Smillie v. Park Chemical Co.,* 710 F.2d 271, 274 (6th Cir.1983); *Cox v. Flood,* 683 F.2d 330, 331 (10th Cir.1982) (per curiam).[3] Moreover, this circuit has on

---

discussion and holding to the issues raised by requests for statutory attorney's fees.

**2.** The exception is *Penland v. Warren County Jail,* 759 F.2d 524 (6th Cir.1985) (en banc). *Penland* was a suit by a prisoner challenging the conditions of his incarceration and seeking declaratory and injunctive relief and attorney's fees. The parties agreed to try the case before a magistrate, with appeal as of right to the district court. After trial, the magistrate granted some of the relief the plaintiff had requested but denied the rest, including attorney's fees. Within ten days after judgment, the plaintiff filed a motion to amend the judgment, asking the magistrate to reconsider his denial of the request for attorney's fees. The magistrate eventually granted the motion and awarded fees. Ten days thereafter, but over four months after entry of judgment, the plaintiff filed a notice of appeal to the district court, seeking reversal of the magistrate's partial denial of his request for declaratory and injunctive relief. The district court took jurisdiction of the appeal and affirmed the magistrate in all respects. On appeal, the Sixth Circuit, sitting en banc, sua sponte raised the question whether the plaintiff's appeal to the district court had been untimely, since over four months had elapsed between entry of judgment on the merits and the plaintiff's filing of an appeal on the merits.

The *Penland* court acknowledged that *White,* as well as *Smillie v. Park Chemical Co.,* 710 F.2d 271, 274 (6th Cir.1983), decided after *White,* had held that a postjudgment motion for attorney's fees was not a motion to amend the judgment and thus did not toll the time within which an appeal could be brought. Nevertheless, it distinguished *White* and *Smillie* on the grounds that the plaintiffs in those cases had requested fees by postjudgment motion, while the plaintiff in *Penland* had requested them in the complaint; and that *White* and *Smillie* had not involved a motion to amend a judgment that had expressly denied a prior request for attorney's fees. Without making any effort to explain why these factual differences justified a difference in result, the *Penland* court held that the unresolved motion to amend the judgment to provide for attorney's fees had tolled the time within which an appeal on the merits could be filed. As we discuss below, we reject this approach.

**3.** In *World of Sleep* and *Gaddis,* the Tenth Circuit declined to apply its holdings retroactively in light of the fact that prior to *White* it had operated under the clearly established rule that an unresolved request for statutory attorney's fees rendered a judgment finally resolving the merits of a case nonfinal and nonappealable. 756 F.2d at 1471; 733 F.2d at 1376. *See, e.g., Black Gold, Ltd. v. Rockwool Industries,* 666

three occasions indicated its agreement with this rule. *See U.S. Industries v. Blake Construction Co.,* 765 F.2d 195, 203 (D.C.Cir.1985) (dictum); *Nichols,* 740 F.2d at 1256 (characterizing as final a district court decision that resolved the merits of a case, notwithstanding the pendency of a postjudgment motion for statutory attorney's fees; unclear whether a holding); *Webb v. HHS,* 696 F.2d 101, 104–05 (D.C. Cir.1982).[4] The dissent, while conceding that *White* requires this conclusion as to *postjudgment* requests for attorney's fees, nevertheless argues that the Supreme Court's holding in *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), requires a different conclusion where, as in this case, attorney's fees are requested in the plaintiff's complaint. We disagree. In *Liberty Mutual,* a district court had granted partial summary judgment to plaintiffs on the issue of defendants liability to them, but had not addressed the question of what relief plaintiffs ought to be granted. The district court certified the judgment as final pursuant to FED. R.CIV.P. 54(b), which authorizes district courts, where appropriate in cases involving multiple claims or parties, to certify as final a judgment that is final as to one or more but not all of the claims or parties involved. Defendants appealed, and the court of appeals affirmed. The Supreme Court, sua sponte, vacated the judgment of the court of appeals and remanded the case with instructions to dismiss for lack of jurisdiction. The Court rested its disposition on the holding that, although plaintiffs had requested a number of different *types* of relief, they had brought only one *claim* for relief, and that Rule 54(b) was therefore inapplicable by its terms. *Liberty Mutual,* 424 U.S. at 742–44, 96 S.Ct. at 1205–07. The Court also noted, however, that the district court's

decision was not appealable directly under 28 U.S.C. § 1291, because it did not finally dispose of all of plaintiffs' prayers for relief. *Id.* at 742, 96 S.Ct. at 1205–06. In doing so, it listed those prayers, including plaintiffs' requests for injunctive relief, monetary relief, and attorney's fees. *Id.* We see nothing in the Court's remarks that constitutes even a remote indication (much less a holding) that the district court's order would not have been appealable under 28 U.S.C. § 1291 had it disposed of all of plaintiffs' prayers for relief except the prayer for attorney's fees.

Nor can we discern such an indication in the Supreme Court's decision in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). In that case, the question was whether attorney's fees that were to be assessed against a common fund created by a class action should be assessed against the entire fund or only the claimed portion of the fund. Boeing was appealing a district court order assessing attorney's fees against the entire fund. In addition to challenging that order, Boeing attempted to argue that the district court had improperly purported finally to determine the extent of Boeing's liability to the common fund prior to the presentation of individual claims against the fund. The Supreme Court held that Boeing could not properly assert the latter argument, because it had failed to bring a separate appeal from the earlier district court order that had fixed the amount of its liability. *Boeing,* 444 U.S. 479–80 n. 5, 100 S.Ct. at 750 n. 5. In noting that that earlier order had been final and appealable notwithstanding the ongoing dispute over attorney's fees, the Court merely noted that, unlike *Liberty Mutual,* the case before it did not involve an unresolved prayer for relief against an opposing party. *Id.*

---

F.2d 1308, 1309 (10th Cir.1981) (per curiam); *Gurule v. Wilson,* 635 F.2d 782, 786–88 (10th Cir.1980). For similar reasons, the Third Circuit adopted the same approach in *West.* 721 F.2d at 95. This Circuit has never had such a rule, and we see—and appellees have suggested—no barrier to applying our holding to the present case.

4. *Webb* declined to apply its holding to the case before it, however, concluding that the case presented "unique circumstances" justifying forbearance. *Id.* at 105–06. No such "unique circumstances" are present in this case.

The dissent appears to believe that this remark was intended to distinguish *Liberty Mutual* on the basis of *when* fees were requested, *i.e.*, in the complaint in *Liberty Mutual* and (apparently) by postjudgment motion in *Boeing.* It seems far more likely, however, that *Boeing* was distinguishing *Liberty Mutual* on the basis of *who* was to pay the fees, *i.e.*, the common fund created by the plaintiffs in *Boeing* and the opposing party in *Liberty Mutual.* The latter distinction, unlike the former, has figured largely in the debate about the appropriate procedural treatment of requests for attorney's fees. *See generally* Green, *From Here to Attorney's Fees*, 69 Cornell L.Rev. at 282–97. Even if the *Boeing* Court meant to distinguish *Liberty Mutual* on the basis of when fees were requested, however, that would indicate neither that the *Boeing* Court regarded the *Liberty Mutual* Court to have *held* that an order leaving a prayer for attorney's fees unresolved was nonfinal and nonappealable nor that the *Boeing* Court believed that that would have been the appropriate resolution of the question had it been at issue in *Liberty Mutual.* At most, it would have indicated a recognition that the question did not need to be decided and a judgment that it was therefore better to pretermit it.

Nor can we agree with the dissent that the rule we apply is inconsistent with the venerable principle that a final judgment must dispose of all requests for monetary relief contained in the complaint. The dissent errs in assuming that requests for statutory attorney's fees are requests for monetary relief within the meaning of this rule. They are no more so than requests for costs,[5] which, if unresolved, do not prevent a merits judgment from being final, even if (as is frequently the case) they are made in the complaint. *Cf.* Fed.R.Civ.P. 58. In *White*, the Supreme Court rested its decision on the fact that *"regardless of when* attorney's fees are requested," 455 U.S. at 451, 102 S.Ct. at 1166 (emphasis added), are separate from and collateral to the judgment on the merits, and distinguishable from other types of relief.

Thus, the distinction urged by the dissent is not supported by the authorities upon which the dissent relies. Moreover, it is flatly rejected by other substantial authority. In addition to the plain language of *White*, decisions of at least three circuits hold judgments to be final and appealable even though they did not resolve a request for attorney's fees contained in the complaint. *See, e.g., Ellender v. Schweiker,* 781 F.2d at 317; *Art Janpol Volkswagen, Inc. v. Fiat Motors of North America, Inc.,* 767 F.2d at 696–97; *World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d at 1471; *EEOC v. Gaddis,* 733 F.2d at 1375–76; *Abrams v. Interco Inc.,* 719 F.2d at 26–27; *cf., e.g., Exchange National Bank v. Daniels,* 763 F.2d at 292–94 (unclear whether request was made in the complaint); *Bernstein v. Menard,* 728 F.2d at 253 (categorically stating that pending attorney's fees issues do not render a judgment on the merits nonfinal).

Finally, the distinction urged by the dissent has no basis in logic or policy. Whatever the arguments for and against the rule that the pendency of a request for statutory attorney's fees does not affect the finality of a judgment disposing of the merits of a suit, *compare White,* 455 U.S. at 452–54, 102 S.Ct. at 1166–68, *with* Green, *From Here to Attorney's Fees,* 69 Cornell L.Rev. 207 (arguing that *White* was wrongly decided), the dissent concedes (as it must) that the Supreme Court has authoritatively resolved that debate, at least as to postjudgment motions for statutory attorney's fees. Thus, the question is whether, given that resolution, there is any reason to accord different treatment to requests for statutory attorney's fees made in the complaint. We can think of none, and, apart from the argument that precedent requires such treat-

5. By saying this we do not intend to imply any view on the ongoing dispute over whether requests for statutory attorney's fees are in fact always properly treated as requests for costs for purposes of Fed.R.Civ.P. 54(d), 58. *See White,* 455 U.S. at 454–55 n. 17, 102 S.Ct. at 1168 n. 17. *See generally* Green, *From Here to Attorney's Fees,* 69 Cornell L.Rev. at 259–68.

ment—which we have already rejected—neither the dissent nor the Sixth Circuit in *Penland* has suggested any. Moreover, the approach proposed by the dissent would be certain to create uncertainty and to trigger litigation on at least two fronts: on the appropriate treatment of requests for statutory attorney's fees made neither in the complaint nor by postjudgment motion (how, for example, would prejudgment motions and motions for interim attorney's fees be treated?); and on the specificity with which fees would have to be requested in the complaint in order to fall within the dissent's rule (for example, would the ubiquitous request for "such other relief as would be just and proper"—a request made by the plaintiffs both in this case and in *White*—suffice?).

We think that here, as elsewhere where a rule fixing the jurisdiction of the courts is at issue, clarity and simplicity are the chief virtues. The principles determining whether a judgment is final are already more than complex enough to bedevil both the attorneys who must follow them and the judges who must apply them, *see, e.g., Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950); *Pabellon v. Grace Line*, 191 F.2d 169, 179–81 (2d Cir.) (Frank, J., concurring), *cert. denied*, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951). We decline the dissent's invitation to complicate them further.

### III

For these reasons, we hold that a judgment finally disposing of the merits of a suit is final and appealable notwithstanding the pendency of a request for statutory attorney's fees, whether the pending request was made in the complaint, by prejudgment motion, or by postjudgment motion. Applying this holding to the facts of this case, we conclude that the district court order of May 22, 1980, which finally disposed of the merits of this suit, was immediately final and appealable, notwithstanding the absence of any final disposition of appellees' request for attorney's fees. As of the effective date of the EAJA, October 1, 1981, no appeal of that order was pending and the time to bring such an appeal had long passed. *See Nichols*, 740 F.2d at 1256. This suit was therefore not pending on that date within the meaning of the EAJA, and appellees are not entitled to an award of attorney's fees under that Act. In virtue of this disposition, we need not reach the other issues raised by the parties.

\*　　\*　　\*　　\*　　\*　　\*

The order of the District Court awarding attorney's fees to appellees is reversed.

*So ordered.*

MacKINNON, Senior Circuit Judge (dissenting):

In a class action against the State Department, Crowley, *et al.*, prevailed on their claim that the Department had improperly abolished certain positions. They now seek attorney fees under the Equal Access to Justice Act (the "Act"), 28 U.S.C. § 2412 (1982 & 1985 Supp.).[1] The effective date of the Act is October 1, 1981, and our decision in *Nichols v. Pierce*, 740 F.2d 1249 (D.C.Cir.1984), prohibits attorney fee awards under the Act if the only matters "pending" on October 1, 1981 relate solely to attorney fees. Thus this case turns on whether the case was "pending" with respect to any matters other than attorney fees on October 1, 1981. On the effective date of the Act, *i.e.*, October 1, 1981, the parties could have appealed *both* the district court's award of attorney fees under a fee-shifting statute other than the Act *and* the district court's award of back pay. Thus since the time to appeal the merits had not expired the case was still *pending*. In addition, it is my opinion the district court correctly determined that Crowley timely filed the application for attorney fees under the Act, and permissibly award-

---

1. The Act expired on September 30, 1984, *see* 28 U.S.C. § 2412 (note), but was reenacted and amended on August 5, 1985. *See* Equal Access to Justice Amendments, Pub.L. No. 99–80, 99 Stat. 183 (1985).

ed Crowley a twenty-five percent upward adjustment of the lodestar. I therefore respectfully dissent from the reversal of the district court's award of attorney fees.

## I.

Plaintiffs-Appellees Crowley, et al. (herein "Crowley"), in a 1974 class action complaint seeking damages, injunctive relief, and reasonable attorney fees, complained that the State Department improperly placed civil servants in overcomplement status, and thereby abolished certain positions but retained the employees at other positions with the same compensation. In a 1977 Memorandum and Order the district court granted appellees partial summary judgment. After the district court's 1977 order, the decision on the merits was not final; it was still necessary to identify the individuals who had been placed in overcomplement status, determine the appropriate relief and adjudicate the claim for attorney fees. The parties subsequently entered into a consent decree authorizing a Special Master to determine the damage claims of eight individual members of the class. On May 22, 1980 the district court affirmed in toto the findings of the Special Master that class members were entitled to back pay and were eligible for attorney fees. Crowley v. Muskie, 496 F.Supp. 360 (D.D.C.1980).

Following the determination by the Special Master, Crowley filed a motion for attorney fees under the 1978 Civil Service Reform Act amendments to the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii) (1982). The district court's decision filed May 22, 1980 adopted the Special Master's recommendation that appellees were eligible for attorney fees under the Back Pay Act. 496 F.Supp. at 362–63. The government timely filed notice of appeal from the district court's decision, but voluntarily withdrew the appeal on September 12, 1980. A year later, by order of September 17, 1981 the district court awarded attorney fees under the Back Pay Act, and on September 28, 1981 Crowley moved for partial relief from

that judgment. The district court granted Crowley's motion on December 9, 1981.

The government appealed the awards of attorney fees and could have appealed the back pay award but did not. This court reversed the district court, holding that Crowley was not entitled to attorney fees under the Back Pay Act. Crowley v. Shultz ("Crowley I"), 704 F.2d 1269 (D.C. Cir.1983). By timely motion, Crowley applied for attorney fees under the Equal Access to Justice Act. The district court held that Crowley was entitled to attorney fees for time spent litigating the case, except for time spent litigating the issue of attorney fees under the Back Pay Act. Memorandum and Order of May 16, 1984. The district court subsequently awarded Crowley $114,044.81 in attorney fees and costs. The award contained a twenty-five percent upward adjustment in the lodestar. Memorandum and Order of July 23, 1984. The government appealed to this court, contending that Crowley was not eligible for fees under the Act, that the application for attorney fees had not been timely filed, and that the upward adjustment was contrary to the Act.

## II.

The Act covers "civil action[s] or adversary adjudication[s] [involving the United States government] ... pending on, or commenced on or after [October 1, 1981]." Equal Access to Justice Act § 208, Pub.L. No. 96–481, 94 Stat. 2330 (1980) (emphasis added). It is therefore necessary to determine at the outset whether Crowley's action was "pending" on October 1, 1981.

After the district court awarded attorney fees under the Act, see Memorandum and Order of May 16, 1984, this court decided Nichols v. Pierce, 740 F.2d 1249 (D.C.Cir. 1984). This decision clarified the meaning of "pending" in the context of the Act. In Nichols the plaintiffs were granted summary judgment on September 12, 1980 against the Department of Housing and Urban Development, in a suit challenging various procedures related to housing subsidies. On October 7, 1980 the Nichols

plaintiffs petitioned for attorney fees under the fee-shifting provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522(a)(4)(E) (1982). The district court denied Nichol's petition for attorney fees, reasoning that the FOIA claim played such a minor role in plaintiffs' case that the case could not be considered to have been brought under the FOIA. On appeal of the district court's denial of fees, we remanded the case to the district court for reconsideration in light of the intervening passage of the Equal Access to Justice Act. The district court denied plaintiffs' motion for attorney fees under that Act, and plaintiffs again appealed.

In interpreting the applicable provisions of the Equal Access to Justice Act, the panel in *Nichols* applied the well-established principle that waivers of sovereign immunity must be strictly construed. "As a waiver of sovereign immunity, the Act's terms must affirmatively *establish* liability, not merely fail to preclude it." *Nichols*, 740 F.2d at 1256 (citation omitted).

The *Nichols* court noted that Congress in the Equal Access to Justice Act did not define "pending," and therefore concluded that Congress used the word "pending" in its ordinary sense. The court stated: "A pending matter is one which is undecided, awaiting decision or settlement; a lawsuit is pending from its inception through the final judgment." *Id.* (citations omitted); *cf Massachusetts Union of Public Housing Tenants, Inc. v. Pierce*, 755 F.2d 177, 177 (D.C.Cir.1985) (per curiam) ("a judgment becomes final because an appeal is completed or foregone"). Thus, a cause is pending until the time for appeal from the final judgment in the cause expires. Writing for the court in *Nichols*, Judge Wilkey stated:

> The complaint raised many substantive legal issues related to the merits of the case, but these issues were all finally resolved by the district court's memorandum and order of 12 September 1980. *That decision essentially ended the lawsuit, since there was no longer any question about whether the appellant was entitled to all of the relief requested in the complaint.* Because no appeal from that decision was prosecuted, no issue even marginally related to the merits of the suit has subsequently been subject to litigation or otherwise contested. Since there was no longer any undecided or unsettled issue in the original lawsuit, that lawsuit has not been pending from the time the district court's final order was entered.

740 F.2d at 1256 (emphasis added). Thus, according to our decision in *Nichols*, when the only matter "pending" on October 1, 1981 was a dispute over attorney fees, the merits and all requested relief having been fully resolved and not subject to further appeal, then the provisions of the Act are not applicable. 740 F.2d at 1257–58. *See also Commissioners of Highways v. United States*, 684 F.2d 443, 444–45 (7th Cir. 1982).

### III.

The threshold issue in this case is whether on October 1, 1981 any disputes were "pending," *i.e.*, still appealable, other than those relating to attorney fees. The district court's May 22, 1980 decision adopted, *inter alia*, the Special Master's recommendation that Crowley was *entitled* to attorney fees (the "entitlement decision") under the Civil Service Reform Act amendments to the Back Pay Act. The government timely filed notice of appeal following that decision, but on September 12, 1980 voluntarily withdrew its appeal. No reason was given for not continuing with its appeal, but it could have been that the government considered its appeal was premature. On September 17, 1981 the district court granted attorney fees in the amount of approximately $160,000. The district court, government, and plaintiffs all referred to this as a "judgment." *See* D.C. District Court File Nos. 239, 241, 242, 244, 246, 247, 249, 250, 253. The government on November 16, 1981 appealed to this court "from the *judgment* of this Court entered on the 17th day of September, 1981 in favor of plaintiffs...." Dist.Ct. File No. 250 (emphasis added). This was the first "judg-

ment" appealed from. The notice of appeal by the government on July 21, 1980 stated it was from "the *order* of this Court filed May 22, 1980...." Dist.Ct. File No. 132 (emphasis added). This difference in terminology is not without significance. *Cf.* 28 U.S.C. §§ 1291 and 1292. The action by the court on September 17, 1981 was obviously the "final decision" in the case[2] and thereupon, under settled procedures, all issues in the cause were open for review on appeal.

However, the government challenged only the entitlement to and the amount of attorney fees awarded by the district court. In opposition Crowley argued that the government had not timely appealed the district court's entitlement decision, rendered May 22, 1980. According to Crowley's argument the government could appeal only the September 17, 1981 decision as to the amount of attorney fees, because in dropping its earlier appeal the government had foregone the right to challenge the district court's May 1980 decision as to entitlement.

This court rejected Crowley's contention, thus in effect holding that interim decisions were not appealable and that the appeal from the *final judgment* opened the entire record to review, *i.e.*, both aspects of an attorney fee award—entitlement and amount—could be appealed within the statutory period for filing appeals, dating from the district court's determination made a year later of the amount of the attorney fee award. *Crowley I,* 704 F.2d at 1271–72. Specifically, we held that the May 22, 1980 decision by the district court, holding that Crowley was *entitled* to attorney fees under the Back Pay Act, was only a partial decision since the *amount* of attorney fees remained to be determined, and thus was not a final and appealable order in the case

that precluded the government from appealing the decision if an appeal was not taken within sixty days. *Id.* To have held otherwise in *Crowley I* would have required piecemeal appellate review of attorney fee awards contrary to sound policy and the requirements of our procedural rules. *See, e.g., Catlin v. United States,* 324 U.S. 229, 233–34, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945); Fed.R.Civ.Pro. 54(b); 28 U.S.C. § 1291 (1982).

In this appeal we must decide a related question of appealability: Whether issues involved in the district court's order of May 22, 1980 were appealable when the *amount* of attorney fees under the Back Pay Act was determined on September 17, 1981. The import of this inquiry in the present case is clear, for if *only* issues relating to attorney fees were appealable on the October 1, 1981 effective date of the Act, then our decision in *Nichols* counsels that nothing was "pending" that would allow an appeal of the attorney fee recovery.

The Supreme Court decision in *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), discussed a related question of the appealability of an attorney fee application under 42 U.S.C. § 1988[3] which arose in a case charging a violation of the Social Security Act. The court specifically noted in the first paragraph of its opinion: "His complaint did not specifically request attorney's fees." *Id.* at 447, 102 S.Ct. at 1164. In *White* the Court addressed the question whether a post-judgment motion for attorney fees, in a case which did not specifically request attorney fees, was a motion to amend the judgment, which was required to be filed within the ten-day time limit of Federal Rule of Civil Procedure 59(e).[4] In *White* a

---

2. There was one subsequent minor modification. Dist.Ct. File No. 250 (Dec. 16, 1981).

3. The statute provides:
    In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the

prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
    42 U.S.C. § 1988 (1982).

4. Rule 59(e) provides:
    A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

successful litigant had moved for attorney fees four and one-half months after plaintiff had obtained a judgment redressing violations of the Social Security Act and the Due Process Clause of the Fourteenth Amendment. The First Circuit held, however, that the motion for attorney fees was not timely because it was not made within ten days of entry of judgment as required by Rule 59(e). 629 F.2d 697, 699 (1st Cir. 1980). The Supreme Court reversed, holding that *post-judgment* attorney fee petitions were not governed by Rule 59(e)'s ten-day time limit on motions to alter or amend a judgment which typically have encompassed those matters within the merits of the judgment, *i.e.*, elements of traditional relief. 455 U.S. at 451, 102 S.Ct. at 1166. Instead, the Supreme Court implicitly treated the post-judgment attorney fee petition in *White* as collateral and independent from the merits of the litigation for purposes of appellate jurisdiction.

This conclusion follows from consideration of the interplay of Rule 59(e) (ten-day period for motion to alter or amend judgment), Rule 54(a) (defining "judgment"), and 28 U.S.C. § 1291 (final decision). "Judgment" is defined in Rule 54(a) as "a decree or any order from which an appeal lies." Rule 54(a) in turn requires reference to 28 U.S.C. § 1291, which states that only a "final decision" may be appealed to the courts of appeals. Thus, if the motion for attorney fees is not a "motion to alter or amend the judgment," then the district court's disposition of the attorney fee petition will have no effect on the finality of the validly entered "judgment." By necessary implication the judgment on the merits becomes a final decision—and hence appealable—regardless of the status of the attorney fee petition. *See* Green, *From Here to Attorney's Fees: Certainty, Efficiency, and Fairness in the Journey to the Appellate Courts,* 69 Cornell L.Rev. 207, 226–27 (1984). The decision on the merits may therefore be severable from a post-judgment motion for attorney fees for the purpose of determining appealability issues, where the complaint did not request attorney fees.

The picture is clouded, however, by the long-standing principle that a "final decision" under 28 U.S.C. § 1291 does not exist until *all* elements contained in a plaintiff's prayer for relief have been decided by the district court. *See Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 742, 96 S.Ct. 1202, 1205–06, 47 L.Ed.2d 435 (1976); *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 632–33, 89 L.Ed. 911 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); *American Federation of Government Employees v. Federal Labor Relations Authority,* 777 F.2d 751, 755 (D.C.Cir.1985). In *Liberty Mutual* plaintiffs had received *partial* summary judgment establishing defendant's liability for claims arising under Title VII on a complaint that *did* request attorney fees in its *ad damnum* clause. Without addressing the question of relief, the district court entered judgment only as to liability pursuant to Civil Rule 54(b).[5] The Third Circuit affirmed the district court's decision on the merits. 508 F.2d 239, 245 (3d Cir.1975). The Supreme Court reversed, holding that the plaintiff had not presented separate

Fed.R.Civ.P. 59(e).

**5.** Rule 54(b):

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at anytime before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b).

"claims" as Rule 54(b) requires, but rather had merely presented variant requests for relief flowing from a single claim. As stated by the Supreme Court in *Liberty Mutual:*

> It is obvious from the District Court's order that respondents, although having received a favorable ruling on the issue of petitioner's liability to them, received none of the relief which they expressly prayed for in the portion of their complaint set forth above. They requested an injunction, but did not get one; they requested damages, but were not awarded any; *they requested attorneys' fees, but received none.*
>
> ... [T]he District Court's order ... finally disposed of one of respondent's prayers for relief.

424 U.S. at 742, 96 S.Ct. at 1205–06 (emphasis added). The Court held that the district court's decision merely on liability was not an appealable "final decision" under the statute because the court had not ruled on the injunction, damages and attorney fees —i.e., there was no final decision on the cause, it was still "pending," and the judgment therefore was not yet appealable. *Id.* at 744, 96 S.Ct. at 1206–07; *cf. Boeing Co. v. Van Gemert,* 444 U.S. 472, 480 n. 5, 100 S.Ct. 745, 750 n. 5, 62 L.Ed.2d 676 (1980) (characterizing *Liberty Mutual* as a case "where a prayer for attorney's fees against an opposing party remains unanswered"). In the present case, as in *Liberty Mutual,* the prayer for relief specifically included "costs incurred herein, including reasonable attorney's fees." Complaint at 25. Moreover the "quantum of fees [$160,000] is a major issue" in this case. *Crowley I,* 704 F.2d at 1272.

These cases indicate that finality of judgment for purposes of appeal is to be determined on the basis of what was included in the plaintiff's prayer for relief. The Supreme Court's decision in *White v. New Hampshire Department of Employment Security* is not to the contrary. *White* allowed attorney fees in a civil rights action where the complaint did *not* include a specific prayer for "attorney fees," because the statute, 42 U.S.C. § 1988, allowed attorney fees "as part of the costs." *White,* 455 U.S. at 448, 102 S.Ct. at 1164.

With these considerations in mind we repeat that Crowley's complaint filed in 1974 specifically requested reasonable attorney fees. Complaint at 25. On May 22, 1980 Crowley received a favorable judgment from the district court as to all issues except for the amount of attorney fees. The government timely filed notice of appeal, but voluntarily withdrew its appeal on September 12, 1980. On September 17, 1981 the district court determined the amount of attorney fees under the Back Pay Act. At that point in time—given the holding of *Liberty Mutual*—the district court's decision from the previous year, *Crowley v. Muskie,* 496 F.Supp. 360 (D.D. C.1980), became an appealable final decision. *Crowley I* supports this conclusion, for its recognition of the reviewability of the entitlement decision made over a year before the amount of fees was determined is tantamount to a recognition that the time to appeal had not expired on other decisions made prior to determination of the fee amount.

September 17, 1981 is therefore the date from which both parties could have appealed the attorney fee award *and* the award of back pay. That the government did not appeal the back pay award does not alter the fact that the time to appeal the merits had not been exhausted. The government could have timely appealed the back pay award following the entry of the attorney fee award as the final judgment on the relief requested in the complaint. Until the expiration of the statutory period for filing the notice of appeal, *see* Fed.R.App.P. 4(a)(1), the entire cause of action between Crowley and the government was *"pending"* as to the merits of the case on all issues, including attorney fees. Therefore, on the effective date of the Act, October 1, 1981, the civil action against the government was *pending.*

The facial similarity between this case and *Nichols v. Pierce, supra,* is misleading, because the request for attorney fees in

*Nichols,* as in *White,* was *not* presented in the prayer for relief. Indeed, given the continued vitality of the finality principle as stated in *Liberty Mutual Insurance Co. v. Wetzel, see supra,* this court's holding in *Nichols v. Pierce* is sensible only when the request for attorney fees is *not* included in the prayer for relief, because under *Liberty Mutual* all relief requested in the prayer of the complaint must be disposed of by the district court as a prerequisite of a reviewable final decision.

The government further argues that Crowley's motion, filed June 13, 1983, for attorney fees under the Act was invalid because it was untimely filed. Applications for attorney fees under the Act must be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B) (1982). This court recently held that the thirty-day period "begins to run only when a judgment is 'no longer contestable through the appellate process.'" *Massachusetts Union of Public Housing Tenants v. Pierce,* 755 F.2d 177, 180 (D.C.Cir. 1985) (quoting *McDonald v. Schweiker,* 726 F.2d 311, 313 (7th Cir.1983)). Congress explicitly adopted this interpretation of § 2412(d)(1)(B) in its recent reenactment of the Act. See Pub.L. 99–80 § 2, May 15, 1985 (defining "final judgment" as "a judgment that is *final and not appealable*") (codified at 28 U.S.C. § 2412(d)(2)(G)) (emphasis added). I agree with the district court that the date of the final judgment in this case was June 10, 1983, the date we issued our mandate in *Crowley I,* 704 F.2d 1269 (D.C.Cir.1983), reversing the district court and ending the appellate proceeding arising from the original complaint. Crowley's motion for attorney fees filed June 13, 1983, three days after the issuance of the mandate, was therefore timely.

## IV.

The Act restricts the court's discretion with respect to attorney fees as follows:

[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii) (1982) (emphasis added). The district court awarded Crowley an upward adjustment of twenty-five percent of the lodestar, based on the quality of representation and the *delay* in payment. Memorandum and Order of July 23, 1984, at 9–10. The government contends that any such adjustment is forbidden *as a matter of law* by the above-quoted provision of the Act. *See* Government Brief at 14. The government does not, however, contend that the district court committed an abuse of discretion in finding Crowley deserving of an upward adjustment of twenty-five percent.

The Supreme Court's recent decision in *Library of Congress v. Shaw,* —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), reiterates the requirement of strictly construing statutes permitting monetary awards against the United States government.[6] *Id.* at —— – ——, 106 S.Ct. at 2963–65. Moreover, the traditional rule against permitting awards of interest against the sovereign requires according to Justice Blackmun's majority opinion, "an added gloss of strictness upon these usual rules." *Id.* The Court's opinion in *Shaw* further stated that, for the purpose of a waiver of sovereign immunity, an award for *delay* in payment is "functionally equivalent" to an award for interest: "Interest and a *delay* factor share an identical function. They are designed to compensate for the belated receipt of money." *Id.* at ——, 106 S.Ct. at 2965 (emphasis added). The Court therefore held that "the force of the no-interest rule cannot be avoided simply

---

6. *Shaw* held that Congress had not waived sovereign immunity for an award of interest accompanying a grant of attorney fees under § 706(k) of Title VII. That section provided that "the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k).

by devising a new name for an old institution." *Id.*

The Supreme Court's decision in *Shaw* —particularly *Shaw's* equation of interest and delay—calls into question part of this court's holding in *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211 (D.C.Cir. 1984) (hereinafter *"ASH"*). In that case this court held that the Equal Access to Justice Act allows the district court to consider "other, unenumerated special factors" in determining whether to increase the award from the maximum $75 per hour specified in the Act. *Id.* at 218. This much is readily apparent from the text of the portion of the Act quoted above. *ASH* therefore proceeded to incorporate in the special factor inquiry elements traditionally considered by courts in awarding attorney fees—among those factors, delay in payment and quality of representation. 724 F.2d at 218 (citing *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc)).

The holding of *ASH* that delay in payment may be considered in an attorney fee award under the Equal Access to Justice Act cannot survive the Supreme Court's decision in *Shaw*. This follows from the holding in *Shaw* that interest and a delay-factor are "functionally equivalent," —— U.S. at ——, 106 S.Ct. at 2966, and that the waiver of sovereign immunity must be express in order to permit an upward adjustment of attorney fees for either interest or compensation for delay. Given this exacting standard, it is clear that an interest/delay award cannot come within the unenumerated "special factor[s]" considered in attorney fee awards under the Equal Access to Justice Act. The only clarification of "special factor" within the statute is the reference to factors "such as the limited

availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). An award for interest/delay, which would invariably be present in every case, is not a special factor such as the limited availability of qualified attorneys, which will be present only in unusual cases. This analysis is the most sensible way to reconcile the Supreme Court's holding in *Shaw*, the remaining parts of this court's decision in *ASH*, and the statutory language of the Equal Access to Justice Act.

In the present case, the district court based an upward adjustment of twenty-five percent on two factors: delay in payment[7] and quality of representation. Memorandum and Order of July 23, 1984, at 9–10. The district court's analysis thus used one factor—quality of representation—explicitly approved by this court in *ASH*, 724 F.2d at 218–20, and one factor—delay in payment—rendered invalid by the Supreme Court's decision in *Shaw*. The district court did not apportion the twenty-five percent upward adjustment between the two factors. Therefore in my opinion the case must be remanded to the district court to determine which portion of the upward adjustment is attributable to the quality of representation, which to delay in payment. The portion attributable to the former may stand, that attributable to the latter may not.

## V.

In my opinion the court should hold that Crowley's motion for attorney fees under the Equal Access to Justice Act was pending on October 1, 1981, and was timely filed within thirty days of final judgment. Because the district court did not apportion

---

7. The Act specifically allows an upward adjustment of the attorney fee award for "an increase in the cost of living." 28 U.S.C. § 2412(d)(2)(A). But the district court nowhere indicated a reliance on that part of the Act, and instead referred only to the delay factor permitted by *ASH* as an unenumerated "special factor." While delay and a change in the cost of living are similar in that they both compensate for the change in the value of money overtime, they are analytically distinguishable. A change in the

cost of living (or inflation), an easily verifiable factor that ordinarily should be proven by use of a reliable reference such as the consumer price index, compensates for the loss due to the change in the value of money. Delay or interest, on the other hand, compensates primarily for the loss of the use of money, and would involve different, perhaps more extensive, proof at trial. Due to the rigorous standard of *Library of Congress v. Shaw*, such distinctions are of more than semantic significance.

the twenty-five percent upward adjustment between the permissible factor of quality of representation and the impermissible factor of delay in payment, I would remand the cause for proceedings not inconsistent with this opinion.

